**Electronically Filed
Supreme Court
29347
21-DEC-2010
01:27 PM**

IN THE SUPREME COURT OF THE STATE OF HAWAIʻI

---o0o---

STATE OF HAWAIʻI,
Petitioner/Plaintiff-Appellee,

vs.

WANDA RURIKO MITA,
Respondent/Defendant-Appellant.

NO. 29347

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(HPD Criminal No. 164978DL (1P108009607)

December 21, 2010

RECKTENWALD, C.J., NAKAYAMA, J., AND CIRCUIT JUDGE LEE
IN PLACE OF MOON, C.J., RECUSED, AND ACOBA, J.,
DISSENTING, WITH WHOM DUFFY, J., JOINS

OPINION OF THE COURT BY RECKTENWALD, C.J.

Wanda Ruriko Mita was charged with Animal Nuisance in violation of Revised Ordinances of Honolulu (ROH) § 7-2.3 (1990 & Supp. No. 6, 2-05), which provides that "[i]t is unlawful to be the owner of an animal, farm animal, or poultry engaged in animal nuisance as defined in section 7-2.2[.]" Mita was originally issued a citation that indicated that she committed this offense

by owning, harboring, or keeping two dogs that were barking. Prior to the start of trial, the State also orally charged Mita by using language that tracked the provisions of ROH § 7-2.3. Mita objected that the charge was insufficient because it did not give Mita notice of what type of "animal nuisance" she was being charged with, as that term is defined in ROH § 7-2.2.[1]  The District Court of the First Circuit, Honolulu Division (district court)[2] concluded that the charge was sufficient, and convicted Mita after a bench trial.

Mita appealed to the Intermediate Court of Appeals (ICA).  In its February 23, 2010 Summary Disposition Order (SDO), the ICA cited State v. Wheeler, 121 Hawai'i 383, 219 P.3d 1170 (2009), in concluding that the charge against Mita was insufficient because the definition of the term "animal nuisance" in ROH § 7-2.2 contains an essential element of the offense of animal nuisance, and the offense cannot be understood by a person of common understanding without including that definition.  The ICA accordingly vacated the judgment of the district court, and remanded with instructions to dismiss without prejudice.

The State of Hawai'i (State) raises the following question in its application for a writ of certiorari: "Whether the ICA gravely erred as a matter of law and fact in holding that the oral charge of Animal Nuisance was insufficient."

For the reasons set forth below, we conclude that the citation and oral charge, when considered together, gave Mita fair notice of the offense.  In contrast to the circumstances in Wheeler, the definition of "animal nuisance" in ROH § 7-2.2 does not create an additional essential element of the offense, and,

---

[1]     As discussed further infra, ROH § 7-2.2 (1990 & Supp. No. 6, 2-05) defines animal nuisance as including several different types of animal behavior.

[2]     The Honorable Faye M. Koyanagi presided.

-2-

in any event, is consistent with its commonly understood meaning.
Thus, the charge against Mita was sufficient.  Accordingly, we
reverse the ICA's judgment, and remand this case to the ICA to
address the remaining issues raised by Mita, which the ICA did
not resolve.

## I.  Background

### A.    Background Facts

#### 1.    Citation and Oral Charge

On June 5, 2008, Mita was issued an "Animal License &
Regulation – Complaint & Summons" (citation).  The citation,
signed "Wanda Mita[,]" stated that Mita "[d]id on/or about this <u>3</u>
day of <u>June</u> Yr <u>08</u> at about <u>1940-2050</u> did own, harbour or keep
(animal description): <u>Boxers</u> Name <u>Roxy/Obie</u> Color <u>Brown</u> . . . at
(location): [<u>Mita's residence address</u>] and did commit the offense
of: . . . animal nuisance-Sec.: <u>7-2.3 Barking Dog</u>[.]"
Additionally, the citation had a section entitled "Officer's
Report" which stated that "Mita was issued a Barking 3rd
citation. She was already issued a previous Barking 2 warning
citation."  The citation also advised Mita of her appearance date
in court.

Mita appeared in court on July 17, 2008, represented by
counsel, and waived reading of the charge and entered a plea of
not guilty.

At the start of trial on August 14, 2008, prior to any
witnesses being called, the Deputy Prosecuting Attorney (DPA)
read the following charge to Mita: "On or about June 3rd, 2008,
in the city and county of Honolulu, state of Hawaii, you as the
owner of an animal, farm animal, or poultry engaged in animal
nuisance as defined in section 7-2.2, thereby violating section
7-2.3 of the Revised Ordinances of Honolulu."

ROH § 7-2.3 provides as follows:

> **[] Animal nuisance –- Prohibited**. <u>It is unlawful to be</u>

<u>the owner of an animal, farm animal or poultry engaged in animal nuisance as defined in Section 7-2.2;</u> provided, however, that it shall not be deemed to be animal nuisance for purposes of this article if, at the time the animal, farm animal or poultry is making any noise, biting or stinging, a person is trespassing or threatening trespass upon private property in or upon which the animal, farm animal or poultry is situated, or for any other legitimate cause which teased or provoked said animal, farm animal or poultry.

(Emphasis added).

ROH § 7-2.2 defines "animal nuisance" as follows:

. . . .

"Animal nuisance," for the purposes of this section, shall include but not be limited to any animal, farm animal or poultry which:

(a) Makes noise continuously and/or incessantly for a period of 10 minutes or intermittently for one-half hour or more to the disturbance of any person at any time of day or night and regardless of whether the animal, farm animal or poultry is physically situated in or upon private property;

(b) Barks, whines, howls, crows, cries or makes any other unreasonable noise as described in Section 7-2.4(c)[3] of this article; or

(c) Notwithstanding the provisions of [Hawaiʻi Revised Statutes (HRS)] Section 142-75 [governing the duties and liabilities of an owner of a dog that has bitten another person] or any other applicable law, bites or stings a person.

Mita objected to the oral charge:

[] Your Honor, if I may make for the record an objection to the arraignment. I do not believe that arraignment is specific enough to put the defendant

---

[3]     ROH § 7-2.4(c) (1990 & Supp. No. 6, 2-05) provides:

Noise is unreasonable within the meaning of this article if considering the nature and the circumstances surrounding the animal nuisance, including the nature of the location and the time of the day or night, it interferes with reasonable individual or group activities such as, but not limited to, communication, work, rest, recreation or sleep; or the failure to heed the admonition of a police officer or a special officer of the animal control contractor that the noise is unreasonable and should be stopped or reduced.

specifically on notice what part of the - if I may call "barking dog" ordinance she's being charged with. There's [sic] basically four violations or four acts which may constitute a violation of the ordinance. One is whether or not the dog made noise continuously and/or incessantly for a period of ten minutes; that's ordinance section 7-2.2(a); or made noise intermittently for one half-hour or more to the disturbance of any person at any time of day or night; that's ordinance section 7-2.2(a); or bark, whine, howl, cry, or make other unreasonable noise which interfered with reasonable individual or group activity such as but not limited to communication, work, rest, recreation, or sleep; that's ordinance section 7-2.2[(b)] and incorporating 7-2.4(c); or failed to heed the admonition of a police officer or a special officer of the animal control contractor that the noise was unreasonable and should be stopped; that's ordinance section[s] 7-2.2[(b)] and 7-2.4(c). And it's our position that under State v. Jendrusch, 58 Haw. 279, [567 P.2d 1242 (1977),] a 1977 case, we should receive specificity in the arraignment so that we know exactly which of these sections of the ordinance we must defend against.

The DPA argued that the oral charge was sufficient because:

[Mita] is charged under section 7-2.3. 7-2.2 is a definition section, in which it defines animal nuisance, and section 7-2.3 incorporates a general animal nuisance as defined in section 7-2.2; and the State's position would be that the wording of the statute is broad enough to encompass all subsections (a), (b), and (c) listed under animal nuisance.

The DPA offered, however, to read the definition of animal nuisance, but the district court found that a reading was unnecessary and that the arraignment was proper. Mita pled not guilty.

## 2. Evidence at Trial

At trial, the State called two witnesses, both of whom were neighbors of Mita. Both witnesses testified that they heard Mita's dogs barking on the evening of June 3, 2008. The first witness testified that she made a written record of Mita's dogs barking on June 3, 2008 from 7:45 p.m. to 8:50 p.m. She testified that she knew it was Mita's dogs barking by their distinctive bark. The second witness testified that she made a

-5-

written record of Mita's dogs barking on June 3, 2008 from approximately 7:30 p.m. to 8:45 p.m. She testified that she specifically saw Mita's dogs barking that evening, and could distinguish their bark from that of other dogs in the area.

Following the State's evidence, Mita moved for a judgment of acquittal on six grounds outlined in her Trial Memorandum and Memorandum in Support of Motion for Judgment of Acquittal filed on August 14, 2008, as well as her Supplemental Memorandum in Support of Motion for Judgment of Acquittal filed on August 22, 2008. Relevant to the instant appeal, Mita argued that the charge was insufficient because it only charged Mita with violating ROH § 7-2.3, prohibiting animal nuisance, and did not apprise Mita what specific act contained within the definition of "animal nuisance" in ROH § 7-2.2 she was being charged with. The district court denied the motion, and ruled, inter alia, that the charge was sufficient.

The defense called one witness, who was also a neighbor of Mita. The defense witness testified that she "did not notice any dogs barking" the evening of June 3, 2008, and that if Mita's dogs had been barking, she was "almost certain" that she would have noticed it.

### 3.    Renewed motion for judgment of acquittal

After the defense rested, Mita renewed her motion for judgment of acquittal. The district court denied the motion and found Mita guilty of violating ROH § 7-2.3.[4] The district court entered its judgment on August 28, 2008, convicting Mita of violating ROH § 7-2.3 and sentencing Mita to pay a $50 fine.

---

[4]    The district court concluded that the State proved beyond a reasonable doubt that Mita's dogs were barking, based on the testimony of the State's witnesses. The district court additionally concluded that the State's witnesses "had a greater opportunity to make these observations and hearing the dogs" than did the defense witness, due to the positioning of the respective properties.

Mita filed her notice of appeal on September 5, 2008.

**B.  ICA Appeal**

On appeal to the ICA, Mita raised several points of error.  She argued that the State failed to prove the following beyond a reasonable doubt: (1) that Mita owned the dogs which were allegedly barking; (2) Mita's reckless state of mind; (3) that the dogs were barking in violation of ROH § 7-2.3; and (4) that a qualified animal control officer had issued Mita the citation.  Additionally, Mita argued that the charge was insufficient and that ROH § 7-2.3 is unconstitutionally vague.

Citing to Wheeler, a majority of the ICA held in a SDO that the charge was insufficient, and therefore vacated Mita's conviction and sentence and remanded the case to the district court with instructions to dismiss without prejudice. Specifically, the ICA concluded that:

> The offense of Animal Nuisance is not understood by a person of common understanding because the ordinance refers to "an animal, farm animal or poultry engaged in animal nuisance as defined in Section 7-2.2." The term "animal nuisance" is specifically limited to three types of actions which the animal, farm animal, or poultry must commit in order to be considered a violation of ROH § 7-2.3. A violation of ROH § 7-2.3 simply cites another ROH section which contains an essential element that the State must prove to find Mita guilty. This did not provide fair notice to Mita.

The ICA did not address Mita's remaining points of error.

Chief Judge Nakamura dissented, concluding that the oral charge against Mita was sufficient.  He distinguished the charge against Mita from that in Wheeler, where the defendant was charged with operating a vehicle under the influence of an intoxicant (OVUII).[5]  First, Chief Judge Nakamura reasoned that, unlike the

_____

[5]    As discussed infra, the charge in Wheeler tracked the language of the relevant statute, HRS § 291E-61 (2007), and alleged that the defendant "did operate or assume actual physical control of a . . . vehicle[,]" but did
(continued...)

-7-

term "operate" as used in the charge in <u>Wheeler</u>, "[t]he statutory definition of 'animal nuisance' does not depart from the commonly understood meaning of the term." Second, he concluded that unlike <u>Wheeler</u>, where "the statutory definition of the term 'operate' create[d] an additional essential element" and therefore needed to be alleged, "the statutory definition of 'animal nuisance' does not purport to create an additional essential element for the offense."

Additionally, Chief Judge Nakamura noted that the oral charge "specifically directed Mita to the statutory definition of the term 'animal nuisance'" in ROH § 7-2.2, which "served to further inform and apprise Mita of the nature of the charge against her." He recognized that "[a]lthough including a citation to the offense statute in a charge does not cure a charge that omits an essential element of the offense, it can be argued that a specific reference to the statutory definition, which tells the defendant where to look for additional information, may be considered where the charge already encompasses the essential elements of the offense." Finally, he concluded that pursuant to Hawaiʻi Rules of Penal Procedure (HRPP) Rule 7(a) (2008), cited <u>infra</u>, the charge in the instant case consisted of both the oral charge and the citation, and when considered together, they sufficiently alleged the essential elements of the offense of animal nuisance.

On March 16, 2010, the ICA filed its Judgment on Appeal. The State timely filed its application on June 10, 2010. Mita did not file a response.

---

[5](...continued)
not further include the definition of the term "operate" set forth in HRS § 291E-1 (2007): "to drive or assume actual physical control of a vehicle <u>upon a public way, street, road, or highway</u> . . . ." 121 Hawaiʻi at 386-87, 391, 219 P.3d at 1173-74, 1178 (emphasis in original).

## II.  Standard of Review

"'Whether [a charge] sets forth all the essential elements of [a charged] offense . . . is a question of law[,]' which we review under the de novo, or 'right/wrong,' standard.'" Wheeler, 121 Hawaiʻi at 390, 219 P.3d at 1177 (citation omitted).

## III.  Discussion

The State argues that the ICA erred for two reasons. First, the State argues that the ICA erred because the citation and oral charge should be considered together under HRPP Rule 7(a),[6] and when doing so, the charge sufficiently alleges all the

---

[6]  HRPP Rule 7(a) provides:

**(a) Use of indictment, information, or complaint.** The charge against a defendant is an indictment, an information, or a complaint filed in court, provided that, in any case where a defendant is accused of an offense that is subject to a maximum sentence of less than six months in prison (other than Operating a Vehicle Under the Influence of an Intoxicant) and is issued a citation in lieu of physical arrest pursuant to Section 803-6(b) of the [HRS] and summoned to appear in court, the citation and an oral recitation of the essential facts constituting the offense charged as set forth in Rule 5(b)(1), shall be deemed the complaint, notwithstanding any waiver of the recitation.

(Emphasis added).

HRPP Rule 5(b)(1) provides, in relevant part:

Arraignment. In the district court, if the offense charged against the defendant is other than a felony, the complaint shall be filed and proceedings shall be had in accordance with this section (b). . . . If a defendant is issued a citation in lieu of physical arrest pursuant to Section 803-6(b) of the [HRS] and summoned to be orally charged as authorized by Rule 7(a) of these rules, a copy of the citation shall be filed and proceedings shall be had in accordance with this section (b). . . . When the offense is charged by a citation and the defendant is summoned to be orally charged, arraignment shall be in open court or by video conference when permitted by Rule 43. The arraignment shall consist of a recitation of the essential facts constituting the offense charged to the defendant and calling upon the defendant to plead

(continued...)

-9-

essential elements of the offense of animal nuisance.  Second, the State argues that "the ICA's reliance upon <u>Wheeler</u> in holding the oral charge insufficient was misplaced" because "the charge here, unlike the charge in <u>Wheeler</u>, (1) on its face is 'readily comprehensible to persons of common understanding[,]' and, (2) cited the essential elements of the offense and incorporated a statutory reference to the offense's definitional section."

For the reasons set forth below, we conclude that the charge against Mita was sufficient.

**A.    The Oral Charge Was Sufficient Because it Gave Notice to Mita of the Nature and Cause of the Accusation**

Article I, section 14 of the Hawaiʻi Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation[.]"   "The criminal process begins when the accused is charged with a criminal offense, if it is not a felony, by complaint or oral charge."  <u>State v. Sprattling</u>, 99 Hawaiʻi 312, 317, 55 P.3d 276, 281 (2002) (citing HRPP Rule 5(b)(1)).  "[T]he sufficiency of the charging instrument is measured, inter alia, by 'whether it contains the elements of the offense intended to be charged, and sufficiently apprises the defendant of what he [or she] must be prepared to meet[.]'"  <u>Wheeler</u>, 121 Hawaiʻi at 391, 219 P.3d at 1178 (quoting <u>State v. Wells</u>, 78 Hawaiʻi 373, 379-80, 894 P.2d 70, 76-77 (1995)) (some brackets in original, some added).  "In other words, the oral charge must be worded in a manner such 'that the nature and cause of the accusation [could]

---

[6](...continued)
        thereto.

(Some emphasis added).

The maximum sentence for a violation of the offense of animal nuisance is thirty days imprisonment. ROH § 7-2.10(b) (1990 & Supp. No. 6, 2-05).

be understood by a person of common understanding[.]'" <u>Sprattling</u>, 99 Hawai'i at 318, 55 P.3d at 282 (quoting <u>State v. Israel</u>, 78 Hawai'i 66, 70, 890 P.2d 303, 307 (1995)) (brackets in original). The relevant inquiry, therefore, is whether or not the charge provided the accused with fair notice of the essential elements. <u>Wheeler</u>, 121 Hawai'i at 395, 219 P.3d at 1182.  This court has recognized that "'[a] charge defective in this regard amounts to a failure to state an offense, and a conviction based upon it cannot be sustained, for that would constitute a denial of due process.'" <u>Id.</u> at 391, 219 P.3d at 1178 (quoting <u>State v. Jendrusch</u>, 58 Haw. 279, 281, 567 P.2d 1242, 1244 (1977)).

As noted above, the ICA concluded that, pursuant to this court's holding in <u>Wheeler</u>, the charge in the instant case was insufficient.  However, <u>Wheeler</u> is distinguishable.  In <u>Wheeler</u>, the defendant was orally charged with operating a vehicle under the influence of an intoxicant (OVUII).  121 Hawai'i at 386-87, 219 P.3d at 1173-74.  The charge tracked the language of the relevant statute, HRS § 291E-61, and alleged that the defendant "did operate or assume actual physical control of a motor vehicle while under the influence of alcohol . . . ." <u>Id.</u>  However, the charge did not further include the definition of the term "operate," which was defined in HRS § 291E-1 as "to drive or assume actual physical control of a vehicle <u>upon a public way, street, road, or highway</u> . . . ." <u>Id.</u> at 391, 219 P.3d at 1178 (emphasis in original).  This court held that HRS § 291E-1 establishes an attendant circumstance of the proscribed conduct, i.e., that the offense of OVUII occur on a public way, street, road, or highway.  <u>Id.</u> at 392-93, 219 P.3d at 1179-80.  Therefore, since the location of the proscribed conduct established by HRS § 291E-1 was an attendant circumstance, this court held that it was an essential element of the offense of OVUII that should have been included within the charge against the defendant.  <u>Id.</u>

-11-

(citing HRS § 702-205 (1993)).[7]

This court emphasized that although the charge tracked the language of the statute, the term "operate" as used in HRS § 291E-61 "is neither 'unmistakable' nor 'readily comprehensible to persons of common understanding'" and therefore did not provide the defendant with fair notice of that aspect of the charge. Id. at 394-95, 219 P.3d at 1181-82 (citation omitted). Specifically, this court concluded that the common understanding of the term "operate" "does not geographically limit where the conduct must take place." Id. at 394, 219 P.3d at 1181. Therefore, merely including the term "operate" in the charge, without providing the defendant with notice that his conduct must have occurred "upon a public way, street, road, or highway," was insufficient. Id. Additionally, this court recognized that "none of the other information in the charge provided [the defendant] with fair notice of that element" where, for example, the charge "did not contain any specification of where the alleged offense occurred, other than it took place in the City and County of Honolulu." Id. at 395, 219 P.3d at 1182.

There are two significant factors present in the instant case that were not present in Wheeler, thus making it readily distinguishable: (1) the definition of "animal nuisance" in ROH § 7-2.2 does not create an additional essential element of the offense; and (2) in any event, the definition of "animal nuisance" is consistent with its commonly understood meaning and therefore Mita had fair notice of the offense charged. Thus, the oral charge against Mita, which tracked the language of ROH § 7-2.3, sufficiently alleged all of the essential elements of the offense

---

[7]    HRS § 702-205 provides: "The elements of an offense are such (1) conduct, (2) attendant circumstances, and (3) results of conduct, as: (a) Are specified by the definition of the offense, and (b) Negative a defense (other than a defense based on the statute of limitations, lack of venue, or lack of jurisdiction)."

of animal nuisance.

Under the Hawaiʻi Penal Code, the essential elements of an offense are (1) conduct; (2) attendant circumstances; and (3) results of conduct. Wheeler, 121 Hawaiʻi at 391, 219 P.3d at 1178 (citing HRS § 702-205 (1993)). In Wheeler, because the definition of the term "operate" created an attendant circumstance, which is an essential element of the charge pursuant to HRS § 702-205, this court concluded that the oral charge must provide fair notice of that element. Id. at 392-93, 219 P.3d at 1179-80. Here, Mita was charged with violating ROH § 7-2.3, which provides, in relevant part, that "[i]t is unlawful to be the owner of an animal, farm animal or poultry engaged in animal nuisance as defined in Section 7-2.2." Therefore, in order for a person to be found guilty of violating ROH § 7-2.3 the State must prove (1) that person is the owner of an animal, farm animal or poultry which (2) engaged in animal nuisance.

The oral charge against Mita directly tracked ROH § 7-2.3 and read as follows: "On or about June 3rd, 2008, in the city and county of Honolulu, state of Hawaii, you as the owner of an animal, farm animal, or poultry engaged in animal nuisance as defined in section 7-2.2, thereby violating section 7-2.3 of the Revised Ordinances of Honolulu." The charge did not further allege the definition of "animal nuisance" as found in ROH § 7-2.2. However, this did not render the oral charge insufficient because the definition does not create additional essential elements of the offense of animal nuisance.[8]

The ICA concluded that "[t]he term 'animal nuisance' is

_____

[8] We respectfully disagree with the dissent's contention that State v. Nobriga, 10 Haw. App. 353, 873 P.2d 110 (1994), overruled on other grounds by State v. Maelega, 80 Hawaiʻi 172, 907 P.2d 758 (1995), stands for the proposition that ROH § 7-2.2 contains additional essential elements of the offense of animal nuisance. Nobriga did not address whether ROH § 7-2.2 sets forth additional essential elements, and clearly stated that the "offense" of animal nuisance "is set forth in [ROH] § 7-2.3 (1990)[.]" Id. at 355, 873 P.2d at 112 (emphasis added).

-13-

specifically limited to three types of actions which the animal, farm animal, or poultry must commit in order to be considered a violation of ROH § 7-2.3." However, the definition of "animal nuisance" in ROH § 7-2.2 does not create elements in addition to those already required by ROH § 7-2.3, but instead provides an inclusive, rather than exclusive, list of examples of what the term may include:

> "Animal nuisance," for the purposes of this section, <u>shall include but not be limited to</u> any animal, farm animal or poultry which:
>
> (a) Makes noise continuously and/or incessantly for a period of 10 minutes or intermittently for one-half hour or more to the disturbance of any person at any time of day or night and regardless of whether the animal, farm animal or poultry is physically situated in or upon private property;
>
> (b) Barks, whines, howls, crows, cries or makes any other unreasonable noise as described in Section 7-2.4(c) of this article[, quoted <u>supra</u> note 3]; or
>
> (c) Notwithstanding the provisions of HRS Section 142-75 or any other applicable law, bites or stings a person.

(Emphasis added).

Thus, the charge against Mita is distinguishable from <u>Wheeler</u> because unlike the term "operate," the definition of the term "animal nuisance" does not create any additional attendant circumstances or other essential elements of the offense of animal nuisance. <u>Wheeler</u> does not require that the State provide statutory definitions in every charge which tracks the language of a statute that includes terms defined elsewhere in the code. Requiring the State to do so would render charges unduly complex, in contravention of the policy reflected in HRPP Rule 7(d) that "[t]he charge shall be a plain, concise and definite statement of the essential facts constituting the offense charged." Rather, as this court concluded in <u>Wheeler</u>, the State need only allege the statutory definition of a term when it creates an additional essential element of the offense, and the term itself does not

-14-

provide a person of common understanding with fair notice of that element.  See Wheeler, 121 Hawaiʻi at 393, 219 P.3d at 1180 ("In general, '[w]here the statute sets forth with reasonable clarity all essential elements of the crime intended to be punished, and fully defines the offense in unmistakable terms readily comprehensible to persons of common understanding, a charge drawn in the language of the statute is sufficient.'") (citations omitted) (brackets in original).

The second significant factor discussed by this court when analyzing the sufficiency of the charge in Wheeler was whether the term "operate" gave the defendant fair notice of the requirement that the proscribed conduct occur on a public way, street, road, or highway.  121 Hawaiʻi at 393-96, 219 P.3d at 1181-83.  Specifically, this court considered whether the statutory definition of the term "operate" is "readily comprehensible to persons of common understanding[,]" namely whether a person would understand that to "operate" means not only that a person "perform[s] a function, or operation" but also includes the additional requirement of doing so "upon a public way, street, road, or highway."  Id.  This court contrasted the situation in Wheeler with that in Hamling v. United States, 418 U.S. 87 (1974).  In Hamling, the petitioners challenged the sufficiency of an indictment which charged them with the "use of the mails to carry an obscene book," arguing that although the indictment tracked the language of the statute, it did not provide them with adequate notice because it failed to include the definition of the term "obscenity."  Id. at 91, 117.  The United States Supreme Court rejected that argument, holding that "obscenity" "is a term sufficiently definite in legal meaning to give a defendant notice of the charge against him."  Id. at 118-19.

We emphasized that Hamling was distinguishable from the

circumstances in <u>Wheeler</u> because "the term 'obscenity' itself provided a person of common understanding with some notice of the nature of the prohibited conduct.  In contrast, 'operate' has been statutorily defined . . . in a manner that does not comport with its commonly understood definition."  <u>Wheeler</u>, 121 Hawaiʻi at 394, 219 P.3d at 1181.  Specifically, this court recognized that the common understanding of the term "operate" "does not geographically limit where the conduct must take place."  <u>Id.</u> Therefore, merely including the term "operate" in the charge, without providing the defendant with notice that his conduct must have occurred "upon a public way, street, road, or highway[,]" rendered the charge insufficient.  <u>Id.</u> at 394-96, 219 P.3d at 1181-83.

          The charge in the instant case, like that in <u>Wheeler</u>, tracked the language of the relevant ordinance, ROH § 7-2.3. However, in contrast to <u>Wheeler</u>, "animal nuisance" is consistent with its commonly-understood meaning and provides a defendant with notice of what is being charged.  The dictionary definitions of both "animal" and "nuisance" support this conclusion.  The term "animal" is defined as "[a]ny living creature other than a human being[,]" <u>Black's Law Dictionary</u> 102 (9th ed. 2009) or "a mammal as distinguished from a bird, reptile, or other nonmammal." <u>Webster's 3rd International Dictionary of the English Language Unabridged</u> 85 (3d ed. 1967) (hereinafter "<u>Webster's</u>").  The term "nuisance" is defined as "[a] condition, activity, or situation (such as a loud noise or foul odor) that interferes with the use or enjoyment of property[,]" <u>Black's Law Dictionary</u> at 1171, or "an offensive, annoying, unpleasant, or obnoxious thing or practice: a cause or source of annoyance that although often a single act is usu[ally] a continuing or repeated invasion or disturbance of another's right[,]" <u>Webster's</u> at 1548, or "a person, thing, or circumstance causing inconvenience or

-16-

annoyance[,]"  The New Oxford American Dictionary 1175 (2001).

Thus, a person of common understanding would have fair notice that "animal nuisance" could include the various examples of conduct provided in ROH § 7-2.2:  that the animal, for example, (1) continuously makes noise for at least ten minutes or intermittently for a half hour or more so as to disturb others, (2) barks, whines, howls, crows, cries or makes other unreasonable noises, or (3) bites or stings a person, all of which would cause damage, annoyance or inconvenience to others.  Unlike Wheeler, where it could not be said that a person would understand that the term "operate" necessarily means that they must do so on a public street or roadway, there is nothing contained within the definition of "animal nuisance" in ROH § 7-2.2 that cannot be discerned from its common usage.  Rather, like in Hamling, 418 U.S. at 102, where the United States Supreme Court held that the term "obscene" provided the petitioners with sufficient notice, the common meaning of the term "animal nuisance" is sufficiently broad enough to encompass the component parts of its definition. The charge against Mita which tracked the language of ROH § 7-2.3 without further defining "animal nuisance" was therefore sufficient.

Moreover, in contrast to Wheeler, the charge against Mita contained other information that provided her with fair notice of the offense charged.  Pursuant to HRPP Rule 7(a), when a defendant is accused of an offense that is subject to a maximum sentence of less than six months imprisonment, and the defendant is issued a citation rather than placed under arrest, the citation and the oral charge are considered together to be the complaint. HRPP Rule 7(a).[9]  Here, the maximum sentence for a violation of

_____

[9]    HRPP Rule 7(a) states in relevant part: "[I]n any case where a defendant is accused of an offense that is subject to a maximum sentence of less than six months in prison . . . and is issued a citation in lieu of
(continued...)

the offense of animal nuisance is thirty days imprisonment. ROH § 7-2.10(b). Therefore, when analyzing the sufficiency of the charge of animal nuisance against Mita, this court considers both the citation issued to Mita, as well as the oral charge against her. When doing so, it is clear that all the essential elements of the charge were properly alleged.

As noted above, the citation, signed by Mita, stated that Mita "[d]id on/or about this <u>3</u> day of <u>June</u> Yr <u>08</u> at about <u>1940-2050</u> did own, harbour or keep (animal description): <u>Boxers</u> Name <u>Roxy/Obie</u> Color <u>Brown</u> . . . at (location): [<u>Mita's residence address</u>] and did commit the offense of: . . . animal nuisance-Sec.: <u>7-2.3 Barking Dog</u>[.]" The citation also had a section entitled "Officer's Report" which stated that "Mita was issued a Barking 3rd citation. She was already issued a previous Barking 2 warning citation." Mita's citation therefore put her on notice that she was cited for violating ROH § 7-2.3 (her third citation) because her two dogs were barking. Thus, when the DPA orally charged Mita prior to trial, alleging that she was the owner of an animal that engaged in animal nuisance, Mita had fair notice that the charge was due to her dogs, Roxy and Obie, barking in a manner that disturbed others. Accordingly, the ICA erred in concluding that the charge was insufficient. <u>Cf.</u> <u>State v. Baker</u>, 55 Haw. 621, 622-23, 525 P.2d 571, 572 (1974) (holding that the indictment charging defendant with forgery in the second degree was sufficient, although inarticulately drawn due to technical errors in its wording, because it "<u>provided the [defendant] with sufficient facts to put him on reasonable notice of the charges against him</u>") (emphasis added).

---

⁹(...continued)
physical arrest pursuant to Section 803-6(b) of the [HRS] and summoned to appear in court, the citation and an oral recitation of the essential facts constituting the offense charged as set forth in Rule 5(b)(1), shall be deemed the complaint, notwithstanding any waiver of the recitation." <u>See also</u> <u>supra</u>, note 6.

In sum, the charge against Mita, comprised of both the citation and oral charge, provided her with fair notice of the offense of animal nuisance.  The significant factors in <u>Wheeler</u> which caused this court to conclude that the charge was insufficient are not present here.  While the charge in <u>Wheeler</u> contained a hidden element, the statutory definition of the term "animal nuisance" does not create an additional essential element of the offense of animal nuisance, and, in any event, is consistent with the commonly understood meaning of the term.  Accordingly, the charge against Mita was sufficient.

As noted above, the ICA did not address any of the other issues raised by Mita in her opening brief.  Additionally, neither party has requested that they be addressed here.  Accordingly, in light of our holding that the ICA erred in concluding that the charge against Mita was insufficient, we remand this case to the ICA to address Mita's remaining issues.

## IV.  Conclusion

For the foregoing reasons, we conclude that the charge against Mita was sufficient and remand this case to the ICA to address the remaining issues raised in Mita's opening brief.


On the briefs:

Gary Y. Okuda (Leu &
Okuda) for defendant-
appellant.

Peter B. Carlisle,
Prosecuting Attorney,
James M. Anderson,
Deputy Prosecuting Attorney,
for plaintiff-appellee.

/s/ Mark E. Recktenwald

/s/ Paula A. Nakayama

/s/ Randal K.O. Lee

